**No. 25-60286**

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

Corr Flight S., doing business as Nicholas Air

*Petitioner*

v.

Department of Labor

*Respondent*

---

On Appeal from the DOL Administrative Review Board, Case No. 2023-0036

---

**BRIEF OF PETITIONER CORR FLIGHT S. D/B/A NICHOLAS AIR**

**ORAL ARGUMENT REQUESTED**

---

**BAKER DONELSON BEARMAN
CALDWELL & BERKOWITZ, PC**

*/s/ D. Sterling Kidd*
D. Sterling Kidd
skidd@bakerdonelson.com
One Eastover Center
100 Vision Drive, Suite 400
P.O. Box 14167
Jackson, MS 39211
Telephone: (601) 351-8952

*Attorney for Petitioner Corr Flight S.
d/b/a Nicholas Air*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case (Corr Flight S. d/b/a Nicholas Air[1] v. Department of Labor, Case No. 25-60286). These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

1.    D. Sterling Kidd, Baker Donelson Bearman Caldwell & Berkowitz, Counsel for Petitioner;

2.    Win Gault, Forman, Watkins, & Krutz, Prior Counsel for Petitioner;

3.    Petitioner;

4.    Wendi Litton, general counsel for Petitioner;

5.    Hannah Katherine Herrin, internal counsel for Petitioner;

6.    Landon Breazeale, internal counsel for Petitioner;

7.    The United States Department of Labor;

8.    Karla Jackson Edwards and Sarah Roberts, Counsel for the Department of Labor;

9.    Colin DeBuse;

---

[1] It should be noted that the style of this case is deceiving as Corr Flight S., Inc. is not d/b/a Nicholas Air. Corr Flight S., Inc. is the employment entity for all persons providing services for Nicholas Services, LLC d/b/a Nicholas Air, a Part 135 operator. For the purposes of this Brief, Petitioner will be referred to as "Corr."

i

10.    Gary Linn Evans, Counsel for Colin DeBuse; and

11.    Department of Labor Administrative Law Judge Scott Morris.


*/s/D. Sterling Kidd*
D. STERLING KIDD

## STATEMENT REGARDING ORAL ARGUMENT

This appeal presents important constitutional questions about the Government's ability to admit that it is violating the Constitution by using ALJs, but then continue using those ALJs in violation of the Constitution. The Court has, in similar circumstances, held oral argument in other matters addressing the improper use of ALJs in administrative proceedings. *See generally Cochran v. SEC*, 20 F.4th 194, 191 n.4 (5th Cir. 2021). It also presents important legal questions about the ability of a disgruntled pilot to use personal grievances to manufacture an AIR21 complaint. Accordingly, Corr requests oral argument.

**TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS ........................................................ i

STATEMENT REGARDING ORAL ARGUMENT ............................................. iii

TABLE OF CONTENTS .................................................................................. iv

TABLE OF AUTHORITIES ............................................................................ vi

JURISDICTIONAL STATEMENT ...................................................................1

STATEMENT OF THE ISSUES.......................................................................1

STATEMENT OF THE CASE...........................................................................1

    I.     Statement of the Facts ...................................................................1

    II.    Procedural History........................................................................5

         A.    DeBuse's OSHA Complaint. .....................................................5

         B.    The ALJ's Initial Decision and Order, and ARB Appeal
             and Remand.............................................................................5

         C.    The ALJ's Decision and Order on Remand..............................6

         D.    The ARB's Review of the Second Order...................................6

         E.    Motion for Reconsideration .....................................................7

         F.    Corr's complaint for injunctive relief in federal district
             court........................................................................................7

SUMMARY OF THE ARGUMENT ...................................................................8

ARGUMENT ...................................................................................................9

    I.     Legal and Evidentiary Standards....................................................9

    II.    The Court should dismiss this appeal as premature............................9

    III.   The Court should reverse the ALJ's decision on the ground that
           the ALJ did not have proper authority to issue it. .............................10

         A.    The Government's use of ALJs violates the
             Appointments clause...............................................................10

B.    Corr is not required, on this direct appeal, to show that the President wishes to remove the ALJ who decided this case. ...................................................................................12

IV.   The Decision Below Was Based on Improper Legal Standards. ........14

A.    DeBuse's failure to fly with Captain Lee was not protected activity. ...................................................................15

B.    DeBuse's refusal to fly with Captain Lee was not protected activity because he was informed that Corr had already addressed his concerns with Captain Lee. ...................18

C.    Corr's offer for DeBuse to attend simulator training was an accomodation not an adverse employment action. ..............20

CONCLUSION ...............................................................................................21

CERTIFICATE OF SERVICE ..........................................................................22

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) ......................................23

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*ABM Indus. Groups, LLC v. United States Dep't of Lab.*,
   756 F. Supp. 3d 468 (S.D. Tex. 2024)..................................................................10

*Apple Inc. v. NLRB*,
   143 F.4th 291 (5th Cir. 2025) ..............................................................................9

*Burdette v. Expressjet Airlines, Inc.*,
   ARB Case No. 14-059, 2016 WL 545190 (DOL Adm. Rev. Bd. 2016) .............17

*Brousil v. United States Dep't of Lab., Admin. Rev. Bd.*,
   43 F.4th 808 (7th Cir. 2022)................................................................................19

*Cerny v. Triumph Aerostructures-vought Aircraft Div.*,
   ARB Case No. 2019-005, 2019 WL 7042961 (DOL Adm. Rev. Bd. 2019)  15, 16

*Cmty. Fin. Servs. Ass'n of Am., Ltd. v. Consumer Fin. Prot. Bureau*,
   51 F.4th 616 (5th Cir. 2022)...................................................................... 12, 13

*Cochran v. SEC*,
   20 F.4th 194 (5th Cir. 2021)................................................................................. iii

*Davis v. Dallas Indep. Sch. Dist.*,
   448 F. App'x 485 (5th Cir. 2011) ........................................................................17

*Day v. Staples, Inc.*,
   555 F.3d 42 (1st Cir. 2009) .................................................................................17

*Estabrook v. Admin. Review Bd.*,
   814 F. App'x 870 (5th Cir. 2020)..........................................................................9

*Forrand v. Fedex Express*,
   ARB No. 2019-0041, 2021 WL 423981 (DOL Adm. Rev. Bd. 2021)................15

*K&R Contractors, LLC v. Keene*,
   86 F.4th 135 (4th Cir. 2023)................................................................................11

*Kreb v. Jackosn Jet Ctr.*,
   ARB Case No. 2018-0065, 2020 WL 5902447 (DOL Adm. Rev. Bd. 2020) .....14

*Moore v. United Parcel Serv., Inc.*,
   150 F. App'x 315 (5th Cir. 2005) ................................................................ 15, 17

*Pensyl v. Catalytic, Inc.*,
   ARB No. 83-ERA-21984, 1984 WL 262196 (DOL Adm. Rev. Bd. 1984).........19

*Simpson v. United Parcel Serv.*,
   ARB Case No. 06-0652008, 2008 WL 921123 (DOL Adm. Rev. Bd. 2008) .....17

*Sitts, v. Comair, Inc.*,
   ARB No. 09-130, 2011 WL 2165859 (DOL Adm. Rev. Bd. 2011) ....................19

*Space Expl. Techs. Corp. v. NLRB*,
   151 F.4th 761 (5th Cir. 2025) ........................................ 9, 10, 11, 12, 13

*Szpyrka v. American Eagle Airlines, Inc.*,
   2002-AIR-9 (ALJ July 8, 2002) .......................................................................15

*Thryv, Inc. v. NLRB*,
   102 F.4th 727 (5th Cir. 2024) ...........................................................................9

*Tompkins v. Metro-N. Commuter R.R. Co.*,
   983 F.3d 74 (2d Cir. 2020) ......................................................... 17, 18

*Zurenda v. J & K Plumbing & Heating Co.*,
   ARB No. 98-0881998, 1998 WL 319469 (DOL Adm. Rev. Bd. 1998) ..............15

**STATUTES**

5 U.S.C. § 70 ....................................................................................................9

49 U.S.C. § 42121(b)(2)(B)(iii) ......................................................................14

49 U.S.C. § 42121(b)(4)(A) ......................................................... 1, 11, 12

**RULES**

FED. R. APP. PRO. 32 (a)(7)(B)(iii) .................................................................23

FED. R. APP. PRO. 32(a)(5) .............................................................................32

FED. R. APP. PRO. 32(a)(6) ........................................................................23

FED. R. APP. PRO. 32(a)(7)(B) ....................................................................23

FED. R. APP. PRO. 32(a)(7)(C) ....................................................................23

**REGULATIONS**

29 C.F.R. § 18.57 ........................................................................................11

29 C.F.R. § 18.81 ........................................................................................11

29 C.F.R. § 18.95 ........................................................................................11

29 C.F.R. § 1979.109(a) ..............................................................................14

## JURISDICTIONAL STATEMENT

Corr filed this appeal under 49 U.S.C. § 42121(b)(4)(A) to avoid waiver, because the Government and DeBuse argued appeal was ripe when the ALJ issued its decision on the merits. However, DeBuse's fee petition remains pending before the ALJ, and the ALJ's judgment is not final until the petition is resolved. Thus, Corr maintains this appeal is premature and should be dismissed or stayed.

## STATEMENT OF THE ISSUES

1.  The ALJ's two-tiered insulation violates the Appointments clause of the United States Constitution, therefore this Court should reverse the ALJ's decision and dismiss DeBuse's claims.

2.  The ALJ and ARB erred in holding that DeBuse engaged in protected activity that caused him to be placed on unpaid leave.

## STATEMENT OF THE CASE

**I.    Statement of the Facts**

Nicholas Services, LLC d/b/a Nicholas Air ("Nicholas") is a Part 135 air carrier, and Corr is the employer for all persons performing services for Nicholas. Operations are overseen by seasoned aviation professionals that maintain a safety management system that encourages internal reporting of safety concerns, separates safety investigations from personnel decisions, and implements any needed corrective measures. H'rg Tr. 596:14-597:8.

1

On October 3, 2018, DeBuse was offered a First Officer (Second in Command) position with Corr. H'rg Tr. 105:2-3. He accepted and began his employment on October 15, 2018. H'rg Tr. 105:2-30. In September of 2019, Corr offered DeBuse an opportunity to become trained and qualified as a First Officer on the Phenom 300 aircraft, and he accepted. H'rg Tr. 9:24-10:1. DeBuse completed the ground school training on October 1-2, 2019, and was assigned to be an observer on a Phenom 300 aircraft with Captain Stacey Lee for a flight rotation beginning on October 15, 2019. H'rg Tr. 10:15-21.

During DeBuse's first flight as a First Officer on the Phenom 300, Captain Lee twice reprimanded him, once for derogatory and negative comments regarding Petitioner and the aircraft, and once for attempting to complete his tasks too quickly. 217:9-220:25. Captain Lee is younger than DeBuse, and DeBuse was outraged by Captain Lee's reprimands – he did not "appreciate lectures from thirty five (35) year olds" as a sixty-one (61) year old. H'rg Tr. 229:7-12. That evening, DeBuse contacted flight dispatcher Cody Shears and DeBuse devoted seventeen (17) profanity-laced minutes to insulting and attacking Captain Lee (including homophobic slurs and numerous threats of homicide), but he did not mention a safety concern, not even once. His tirade included the following statements:

> I got a Captain here lecturing me. . . I'm fixing to shank this f***er if you let me. [Id. at pg. 1]

2

[Discussing what happened at the Las Vegas airport] the customer is walking down the stairs and [referring to Captain Lee] a\*\*hole's walking behind him. [Id. at pg. 2]

[Referring to what Captain Lee told him at the Las Vegas airport about his conduct] and I'm thinking, c'mon f\*\*\*er . . .[Id.]

[That he was going to] [s]mack [Captain Lee] in the mouth. No, I'm not going to hit anybody doing that. Um, I can tell you this. At the point and time that Nicholas Air no longer wants me to be employed, put me with this co\*\*sucker again and I won't be here. [Id.]

[Referring to when he had previously flown with Captain Lee in January of 2019 and Captain Lee sent him to do a walk around of the aircraft in the rain, (which Complainant thought Captain Lee did just to show "he was in charge of everything")], he's just as bad as he was in January. [Id.; HT 270:19-272:8 (testimony regarding January incident)]

This a\*\*hole, I can't work. . . I'm sure [Captain Lee] is typing a 50 page letter to [Nicholas' CEO] about [Complainant] . . . He's got his head up [Nicholas' CEO's] a\*\*. Look I'm 61 years. I don't appreciate lectures from 35 year olds. [Id. at pg. 3] If you ever put me with this son of a bi\*\*\* again, I'll kill you. He's an idiot. He's a control freaking f\*\*\*ing idiot. [Id. at pg. 4]

[Referring to Captain Lee] . . .General Lee everybody. [Id. at pg. 5] What is wrong with this f\*\*\*ing human being? He's a middle child evidently. [Id. at pg. 6]

[After being told he would need to come to Oxford after landing in Memphis the following day,] [i]s that where I turn in my pink slip? [Id.] [When referring to Complainant logging the flight information from that day] [a]lright let me see if there's anything else I've missed here that [Captain Lee] will complain about. I don't give a f\*\*\*, I'm just that way. [Id. at pg. 7]

Oh, sh\*\*. I quit. [Id. at pg. 7]

Resp. Opening Br. 5-6 (brackets in original, citing to the record).

A few days after his profanity-laced tirade, DeBuse contacted chief pilot Nick James regarding the October 16, 2019 flight. H'rg Tr. 140:17-20. This time, and for the first time, DeBuse complained that Captain Lee left DeBuse in the cockpit in-flight. H'rg Tr. 360:4-13, 361:10-17. He did not mention any other safety concerns that occurred during the flight, December 8, 2021 Decision and Order, and he subsequently completed several other assignments without incident. H'rg Tr. 11:7-9.

On November 21, 2019, DeBuse was informed that he had been assigned to in-flight training on the Phenom 300 with Captain Lee. H'rg Tr. 138:20-139:10. DeBuse responded that he would not accept any flight with Captain Lee. H'rg Tr. 12:4-5, 138:20-139:5. In an effort to address this statement, several members of Corr's leadership team held a call with DeBuse the very next day. During the call, DeBuse reiterated that he would not fly with Captain Lee, interrupted the leadership team, and was combative. Joint Exhibit 4. DeBuse provided no specifics regarding his concerns with Captain Lee – he simply said that he did not believe Captain Lee was safe. Joint Exhibit 4 at 4-7; H'rg Tr. 219:12-20. The leadership team explained to DeBuse that Captain Lee had been counseled for his conduct and agreed the conduct could not recur – but DeBuse was still not satisfied.

Ultimately, Corr agreed that DeBuse could receive his training via flight simulator, on the condition that he agree to repay Corr for the training if he left the

4

company within the year. H'rg Tr. 476:6-20. Without being trained, DeBuse could not fly, so he was placed on unpaid leave. DeBuse refused to attend the simulator training or to otherwise engage with Corr about his training. H'rg Tr. 245:8-247:3, 248:16-21. Accordingly, on December 10, 2019, Corr informed DeBuse that it accepted his resignation. Complainant's Exhibit 7. The resignation/termination is not at issue here.

## II. Procedural History

### A. DeBuse's OSHA Complaint.

On February 19, 2020, DeBuse filed his AIR 21 complaint with OSHA. On May 28, 2020, OSHA dismissed the complaint because DeBuse's refusal to accept his training assignment was not protected activity. He appealed to the ALJ.

### B. The ALJ's Initial Decision and Order, and ARB Appeal and Remand.

On December 8, 2021, the ALJ held: (1) DeBuse's report that Captain Lee departed from the flight deck was protected activity; *see* Decision and Order at 22-25; (2) DeBuse's unpaid leave and termination were adverse actions; (3) the flight simulator course was an attempt to resolve his concerns, not an adverse action; (4) DeBuse's reporting contributed to his unpaid leave; and (5) DeBuse's refusal of the simulator training was non-protected activity and was the sole cause of his termination. Decision and Order at 30-32. The ALJ awarded back pay for the fifteen (15) day period of unpaid leave, plus post-judgment interest and attorney's fees.

Decision and Order at 34-35. DeBuse submitted a fee petition related to his attorney's fees, which remains pending.

Corr appealed to ARB on December 22, 2021, and it accepted the petition on December 23, 2021. On May 13, 2022, the ARB remanded with instructions for the ALJ "to address Respondent's argument that Complainant's refusal to train with [Captain] Lee was not a protected activity under AIR 21." May 13, 2022 Decision and Order. The ARB further noted that it was "unclear which activity the ALJ found to have contributed to [Complainant's] suspension" and, therefore, instructed the ALJ to "make separate findings for each protected activity concerning whether they were contributing factors" in the suspension. May 13, 2022 Decision and Order.

## C.    The ALJ's Decision and Order on Remand.

On May 24, 2023, the ALJ issued its Decision and Order on Remand. The ALJ found that DeBuse's refusal to fly with Captain Lee constituted protected activity because he had a "reasonable apprehension" that the flight "could reasonably result in a violation of aviation safety regulations." May 24, 2023 Decision and Order on Remand Granting Relief at 6. The ALJ reiterated its prior damages award.

## D.    The ARB's Review of the Second Order.

Corr again petitioned ARB to review the ALJ's Decision, and on December 26, 2024, it affirmed the ALJ in full. December 26, 2024 Decision and Order. It

6

affirmed, holding that: (1) refusing a work assignment is protected activity if it "could reasonably result in a violation of aviation safety regulations"; and (2) DeBuse reasonably believed that Captain Lee might violate an FAA regulation because he had committed at least one past violation. December 26, 2024 Decision and Order at 13, 16.

### E.    Motion for Reconsideration

On February 4, 2025, Corr moved for reconsideration of the ARB's Decision and Order, arguing, *inter alia*, that: (1) the ALJ did not have proper authority to issue a determination under the Appointments clause of the United States Constitution; (2) DeBuse did not engage in protected activity; (3) the ALJ did not properly consider that DeBuse's refusal to fly was based on evidenced animus towards Captain Lee; and (4) and the ALJ applied the wrong legal standard in determining DeBuse could rely upon "Captain Lee's past conduct to surmise that Captain Lee might violate FAA regulations during subsequent flights[.]" The ARB denied the motion.

### F.    Corr's complaint for injunctive relief in federal district court.

Corr has filed a complaint for injunctive relief in the United States District Court for the Northern District of Mississippi. In that suit, it seeks to enjoin, among other things, the ALJ from ruling on DeBuse's pending fee petition. Corr's motion for preliminary injunction was heard in April 2025, and remains pending.

## SUMMARY OF THE ARGUMENT

This Court should reverse and dismiss DeBuse's claims because the ALJ did not, and does not, have authority to issue its decision. In the alternative, this Court should reverse and dismiss DeBuse's claims because the ALJ and the ARB erred in holding that DeBuse engaged in protected activity, and that his unpaid leave was an adverse employment action.

**ARGUMENT**

**I.      Legal and Evidentiary Standards**

The standard of review for AIR21 decisions is governed by 5 U.S.C. § 70, which requires the Court to "consider legal arguments *de novo* . . . and set aside factual findings if they are 'arbitrary capricious, an abuse of discretion, or otherwise not in accordance with the law,' or are 'unsupported by substantial evidence.'" *Estabrook v. Admin. Review Bd.*, 814 F. App'x 870, 872-73 (5th Cir. 2020).   Under the APA, the Court is not "a mere rubber stamp" and must only uphold the "'Board's factual findings" under this standard 'only if they are supported by evidence that is substantial when viewed in light of the record as a whole, including whatever in the record fairly detracts from its weight.'" *Apple Inc. v. NLRB*, 143 F.4th 291, 297 (5th Cir. 2025) (quoting *Thryv, Inc. v. NLRB*, 102 F.4th 727, 737 (5th Cir. 2024)).

Further, this Court should consider the constitutional challenge in the first instance, as neither the ALJ nor the ARB had proper authority or expertise to resolve the challenge. *Space Expl. Techs. Corp. v. NLRB*, 151 F.4th 761, 772 (5th Cir. 2025) ("*SpaceX*").

**II.     The Court should dismiss this appeal as premature.**

Corr filed this appeal because the Government and DeBuse insisted that the decision was final without even without a ruling on the fee petition.  As explained in the procedural history, there is no final order, because the ALJ has not resolved

9

all issues, specifically DeBuse's fee petition. Accordingly, this Court should dismiss this appeal as being premature or should, at a minimum, stay it.

### III. The Court should reverse the ALJ's decision on the ground that the ALJ did not have proper authority to issue it.

#### A. The Government's use of ALJs violates the Appointments clause.

The Government had admitted that it violates the Appointments clause when it utilizes ALJs – like the one who issued the decision here – who have two layers of removal protection. *SpaceX*, 151 F.4th at 766 n.4. Corr in fact does not anticipate any dispute as to the point, as the Government has impliedly conceded the point in the related injunctive relief by failing to dispute it.

Still, it is worth discussing the issue. Indeed, in *SpaceX*, the Court addressed the merits of the constitutional issue and held that: (1) the ALJs "are inferior officers insulated by two layers of for-cause protection"; and (2) their "removal restrictions are unconstitutional." *Id.* at 775. As a result, it affirmed the three district court decisions enjoining ALJ proceedings. *Id.*; *see also ABM Indus. Groups, LLC v. United States Dep't of Lab.*, 756 F. Supp. 3d 468, 476 (S.D. Tex. 2024), *vacated as a condition of settlement*, No. 4:24-CV-03353, 2024 WL 6076919 (S.D. Tex. Dec. 23, 2024) ("DOL ALJs are therefore 'Officers of the United States" under *Lucia*. *Jarkesy* therefore requires that DOL ALJs not be insulated by two layers of good-

cause removal protections.")[2]; *cf. K&R Contractors, LLC v. Keene*, 86 F.4th 135, 143 (4th Cir. 2023) (noting that the parties agreed that DOL judges were equivalent to SEC ALJs before avoiding the constitutional question).

*SpaceX*'s analysis is controlling, although applied to a different statute.

First, just like the NLRB ALJs in *SpaceX*, AIR21 ALJs may issue discovery sanctions, including default judgments, 29 C.F.R. § 18.57, and may exclude "any person" from the hearing, including a party or its attorney. 29 C.F.R. § 18.81; *SpaceX,* 151 F.4th at 775 ("NLRB ALJs may 'admonish or reprimand, after due notice, any person who engages in misconduct at a hearing,' and may strike witness testimony for refusing to answer a question. These are sanction powers which, though not identical, are hardly trivial and arguably more consequential than those held by SEC ALJs.") (internal citation omitted.)

Second, just like decisions issued by NLRB ALJs, AIR21 ALJs often issue decisions that become final without further action. 29 C.F.R. § 18.95 ("The statute or regulation that conferred hearing jurisdiction provides the procedure for review of a judge's decision."); 49 U.S.C. § 42121(b)(4)(A) (providing for review in the relevant circuit court of appeal); *SpaceX*, 151 F.4th at 775 ("NLRB ALJ decisions become final, by regulation, in not-uncommon circumstances—namely, 'if no timely or proper exceptions are filed.'" (internal citations omitted).

---

[2] DOL promptly settled that matter in order to vacate the order.

11

**B.     Corr is not required, on this direct appeal, to show that the President wishes to remove the ALJ who decided this case.**

Corr anticipates that the Government will argue that Corr must satisfy three elements to obtain relief from the violation: "(1) a substantiated desire by the President to remove the unconstitutionally insulated actor, (2) a perceived inability to remove the actor due to the infirm provision, and (3) a nexus between the desire to remove and the challenged actions taken by the insulated actor." *See Cmty. Fin. Servs. Ass'n of Am., Ltd. v. Consumer Fin. Prot. Bureau*, 51 F.4th 616, 623 (5th Cir. 2022).   To the extent the Government makes that argument, it is mistaken.

*Cmty. Fin. Servs.* does not apply in this case, because that test only governs in the context of injunctive relief.  In *SpaceX*, the Court held that ***in the context of injunctive relief***, retroactive relief ***from*** agency action requires the litigant to satisfy the three-element test, but prospective relief ***preventing*** agency action does not: (1) "backward-looking relief requires a causal link between the violation and the outcome[,]"; and (2) prospective relief does not require such a link, because the "proceeding *is* the injury. The harm is not downstream from the process—it *is* the process." 151 F. 4th at 779-780 (emphasis in original).

This case is not in either category.  Corr is not seeking injunctive relief. It is pursuing its right to a direct appeal under AIR21, which provides that "[a]ny person adversely affected or aggrieved by an order . . . may obtain review of the order in the [appropriate] United States Court of Appeals[.]" 49 U.S.C. § 42121(b)(4)(A).

12

The statute does not mention any heightened burden of proof for a constitutional challenge, and this Court undoubtedly has the right to resolve constitutional challenges on appeal. This is particularly true given the established precedent that executive branch officials like ALJs do not have the expertise or authority to adjudicate their own constitutional authority. *SpaceX*, 151 F.4th at 772.[3]

To the extent that this Court must choose one of the tests that applies to injunctive relief cases, the *SpaceX* test should apply. This Court's admonition that permitting an improperly-insulated ALJ to issue binding decisions causes a "here and now" injury, without any need to analyze whether the President wished to remove the ALJ, rings true. *Cf. SpaceX*, 151 F. 4th at 779-780. By contrast, applying *Cmty. Fin. Servs.* to direct appeals is contrary to the plain text of AIR21, and would mean that a litigant cannot meaningfully pursue constitutional arguments on direct appeal, and must instead seek an injunction.

In the alternative, *Cmty. Fin. Servs.* should be overturned for at least two reasons. First, it is not based on Supreme Court precedent, but by "distill[ing] from . . . hypotheticals" and analyzing "concurring Justices' opinions[.]." 51 F.4th at 632. That is not the material on which sound precedent is based. Second, and relatedly, given the sprawling nature of the executive branch, the test is nearly impossible to

---

[3] This precedent also defeats the ARB's flawed holding that Corr was required to raise its constitutional argument before the ALJ.

meet, and would allow the Government to violate with impunity the structure that the framers created that required an accountable executive.[4]  That cannot be what the framers intended when they sought an accountable executive and cannot be the law.

## IV.    The Decision Below Was Based on Improper Legal Standards.

DeBuse was required to prove that: (1) he engaged in protected activity; (2) an unfavorable personnel action was taken against him; and (3) the protected activity was a contributing factor in the unfavorable action. 49 U.S.C. § 42121(b)(2)(B)(iii); 29 C.F.R. § 1979.109(a).  Failure to prove any one of the three elements requires dismissal.  *Kreb v. Jackosn Jet Ctr.*, ARB Case No. 2018-0065, 2020 WL 5902447, at *2 (DOL Adm. Rev. Bd. 2020).

DeBuse's proof failed this test in three ways: (1) he did not engage in protected activity, because his refusal to fly with Captain Lee[5] was based on personal animus and extremely general, likely concocted, safety concerns; (2) he refused to fly with Captain Lee even after he learned any purported safety concern had been

---

[4] For example, Corr could not have obtained discovery regarding the President's desire to remove the ALJ, either in the proceedings below or in this appeal.  That said, the Government's decision to cease defending the constitutionality of the two-tiered removal system supports the idea that the President would like authority to remove ALJs in general.

[5] The ARB focused solely on whether this refusal constituted the protected activity, as there was no suggestion that the earlier report caused the unpaid leave/suspension. December 6, 2024 Decision and Order at 12-19.

addressed; and (3) his unpaid leave pending simulator training was yet another effort to resolve his concerns, not an adverse employment action.

## A.    DeBuse's failure to fly with Captain Lee was not protected activity.

For two reasons, DeBuse did not engage in protected activity when he refused his training flight with Captain Lee.

First, and most fundamentally, DeBuse's refusal had nothing to do with safety – it was based on his personality conflict with Captain Lee.  Actions "premised upon personal pecuniary interests, employee convenience, or irritation with management, [for example], may not rise to the level of an activity Congress intended to protect." *Szpyrka v. American Eagle Airlines, Inc.*, 2002-AIR-9 (ALJ July 8, 2002); see also *Zurenda v. J & K Plumbing & Heating Co.*, ARB No. 98-0881998, 1998 WL 319469 at *4 (DOL Adm. Rev. Bd. 1998) (there was no protected activity when complainant refused to drive a Mack truck not "out of a concern for truck safety, but solely because he did not want to stay at the company apartment in Troy for three nights."); *Forrand v. Fedex Express*, ARB No. 2019-0041, 2021 WL 423981 at *5 (DOL Adm. Rev. Bd. 2021) ("Air 21 is not a general remedy for employment grievances unrelated to air safety."); *cf.  Moore v. United Parcel Serv., Inc.*, 150 F. App'x 315, 319 (5th Cir. 2005) ("Moore, however, was not engaged in a protected activity, as his grievance did not oppose or protest racial discrimination or any other unlawful

15

employment practice under Title VII. Rather, Moore simply complained that UPS had violated its agreement with the union.").

That is precisely what happened here – DeBuse made it explicit (literally) that he would not fly with Captain Lee because he did not like him.  Again: three (3) days before ever reporting any safety concern, DeBuse stated that he would not fly with Captain Lee again, and that he would "kill" the operations staff if they assigned him to fly with Captain Lee again.[6] Resp. Opening Br. 5. DeBuse's indisputable hostility towards Captain Lee remained evident years later in the hearing of this matter, when he complained (for example) of being "lectured by . . . a control freak" H'rg Tr. 149:7-8. and that Captain Lee took actions just to show "that he was in charge of everything" H'rg Tr. 272:5-7.

Second, after waiting nearly a month to base his refusal to fly with Captain Lee on a pretextual safety concern, he offered only a general, unspecified concern that Captain Lee might commit a safety violation.[7]  This was not, and is not, sufficient to constitute reported activity, because generalized concerns are insufficient to constitute protected activity.  *Cerny v. Triumph Aerostructures-vought Aircraft Div.*, ARB Case No. 2019-005, 2019 WL 7042961, at *4 (DOL

---

[6] Debuse went on his homophobic, profanity-laced tirade on October 16, but did not report that Captain Lee left the cockpit until October 19.  Resp. Opening Br. At 5-6.

[7] The timing is also telling; as already explained in the fact section of this brief, Debuse's initial statement that he would not fly with Captain Lee occurred on October 16, but he did not base that refusal on any purported safety concern until November 21, more than a month later.

16

Adm. Rev. Bd. 2019) ("The information provided to the employer or federal government must be specific in relation to a given practice condition, directive, or event that affects aircraft safety[.]") (citing *Burdette v. Expressjet Airlines, Inc.*, ARB Case No. 14-059, 2016 WL 545190, at *1 (DOL Adm. Rev. Bd. 2016)); *see also Simpson v. United Parcel Serv.*, ARB Case No. 06-0652008, 2008 WL 921123 (DOL Adm. Rev. Bd. 2008) (affirming ALJ finding of no protected activity when complainant merely expressed concerns that aircraft was "unsafe" because number of deferrals in flight log suggested something must be defective and therefore "illegal"); *cf. Tompkins v. Metro-N. Commuter R.R. Co.*, 983 F.3d 74, 80 (2d Cir. 2020) (Tompkins did not submit any specific evidence to support his generalized contention that the walkways at the railyard were unsafe, other than to assert that other employees slipped as they walked); *Davis v. Dallas Indep. Sch. Dist.*, 448 F. App'x 485, 493 (5th Cir. 2011) ("We have consistently held that a vague complaint, without any reference to an unlawful employment practice under Title VII, does not constitute protected activity."); *Moore*, 150 F. App'x at 319; *Day v. Staples, Inc.*, 555 F.3d 42, 57 (1st Cir. 2009) ("A generalized allegation of inaccuracy in accounting is insufficient to establish a reasonable belief in a violation of GAAP, much less a reasonable belief in shareholder fraud.")

In addition, DeBuse was required to establish his belief that a violation had occurred or will occur was subjectively held and objectively reasonable. *Cerny* 2019

17

WL 7042961, at *4. DeBuse's reporting did not satisfy this test, either. Again, he reported a generalized concern that because Captain Lee had committed a single instance of improper conduct in the past, he might engage in misconduct in the future. But he was informed that two members of the management team had coached Captain Lee regarding his conduct, Captain Lee had agreed to correct his conduct, and the management team was confident that he would do so. Under this record, his belief was not objectively reasonable. *Tompkins*, 983 F.3d at 80 (employee did not have objectively reasonable belief that walkways were unsafe when other employees disagreed and walked the same area.) Indeed, the record evidence is that Captain Lee remained employed with Corr until July 2020, H'rg Tr. 336:16-17, and it is simply not objectively reasonable that executives would have kept him in the air if they believed he was likely to commit another safety violation.

**B.　DeBuse's refusal to fly with Captain Lee was not protected activity because he was informed that Corr had already addressed his concerns with Captain Lee.**

On October 16, 2019, Complainant made clear the real reason that he did not want to fly with Captain Lee: he did not like (and even hated) Captain Lee. He changed his narrative only a month later, when he was again assigned to fly with Captain Lee, stating that he would not fly with Captain Lee because Captain Lee was not a safe pilot. Corr responded by scheduling a call between DeBuse and the leadership team for the next day. The Chief Pilot assured Complainant he had

18

counseled Captain Lee about the October 16 flight, and the Vice President of Operations assured DeBuse that he would also meet with Captain Lee to reaffirm the message. DeBuse never disputed that this corrective conduct took place. Put simply, Corr addressed and cured his concerns, and when it did that, he lost any argument that his refusal to fly with Captain Lee was protected activity.

"Refusal to work loses its protection after the perceived hazard has been investigated by responsible management officials" and the refusing employee is made aware. *Pensyl v. Catalytic, Inc.*, ARB No. 83-ERA-21984, 1984 WL 262196 at *3 (DOL Adm. Rev. Bd. 1984). *Cf. Sitts, v. Comair, Inc.*, ARB No. 09-130, 2011 WL 2165859 at *10 (DOL Adm. Rev. Bd. 2011) ("When, as here, a pilot expresses a [specific and subjectively and objectively reasonable] safety concern that relates to the aircraft, *and that safety concern is not addressed by the company*," the refusal to work remains protected activity. (emphasis added)); *cf. Brousil v. United States Dep't of Lab., Admin. Rev. Bd.,* 43 F.4th 808, 812 (7th Cir. 2022) ("The same is true for Brousil's case. Substantial evidence showed Brousil refused to use reasonable alternatives in both the July 29 and August 1 incidents. Where there is a safe, reasonable alternative, refusal to use that workaround will typically take the conduct over the line from protected (refusal to engage in unsafe work) to unprotected (refusal to use the alternative).") (parentheses in original).

19

### C.    Corr's offer for DeBuse to attend simulator training was an accommodation, not an adverse employment action.

In response to DeBuse's refusal to fly with Captain Lee, Corr offered an accommodation – simulator training at the company's expense.  The ALJ correctly held that this offer was a *corrective* action:

> The Tribunal credits Respondent's efforts to resolve the training issue with Complainant by offering to send him to a third party entity to obtain his formal SIC type rating. The Tribunal further credits Respondent's position that this actually results in Complainant being more favorably treated in a sense because he would be issued an actual SIC type rating.

December 8, 2021 Decision at pg.  31.[8]

Despite correctly "credit[ing]" the corrective action, the ALJ also held the unpaid leave pending the simulator training was an adverse employment action.  Both things cannot be true – it is nonsensical to say that Corr took adverse action against DeBuse by treating him "more favorably" than other pilots.  The facts are simple: DeBuse could not fly the Phenom 300 – the airframe that he was employed to fly – until he received training, and he refused all of Corr's attempts to provide him that necessary training.

---

[8] This language is taken from the ALJ's original decision, which the ALJ reinstated  and incorporated into his post-remand opinion.

## CONCLUSION

The ALJ who issued the decision below did not have authority to issue it, and for that reason it should be reversed, and the Court should dismiss the complaint. Moreover, DeBuse did not engage in any protected activity, and he did not suffer any adverse employment action. To the contrary, he refused to fly with a pilot he did not personally like, and when faced with this refusal, Corr treated DeBuse "more favorably" than other pilots by offering him simulator training at its own cost.

Therefore, the Court should reverse the decisions below and order that DeBuse recover nothing.

Respectfully submitted,

**BAKER DONELSON BEARMAN CALDWELL & BERKOWITZ, PC**

s/*D. Sterling Kidd*
D. Sterling Kidd
skidd@bakerdonelson.com
100 Vision Drive, Suite 400
Jackson, MS 39211
Telephone: (601) 351-2400
Facsimile: (601) 351-2424

*Attorneys for Petitioner,*
*Corr Flight S. d/b/a Nicholas Air*

21

**CERTIFICATE OF SERVICE**

IT IS HEREBY CERTIFIED that on this the 22nd day of October, 2025, I electronically filed the foregoing with the Clerk of Court of the United States Court of Appeals for the Fifth Circuit by using the CM/ECF system. I certify that service will be made on counsel for the appellant by the CM/ECF system or by electronic mail, and that service for interested party Colin DeBuse will be made on his counsel via e-mail and first-class mail, postage pre-paid, at the addresses listed below:

Gary L. Evans
P.O. Box 130246
The Woodlands, TX 77393
evans@texasaviationlaw.com

Executed October 22, 2025.

*/s/D. Sterling Kidd*
D. Sterling Kidd

**CERTIFICATE OF COMPLIANCE WITH RULE 32(a)**

Pursuant to FED. R. APP. P. 32(g), the undersigned certifies this brief complies with the type-volume limitations of FED. R. APP. P. 32(a)(7)(B).

1. This brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) because:

   this brief contains 4887 words, excluding the parts of the brief exempted by FED. R. APP. P. 32 (a)(7)(B)(iii).

2. This brief complies with the typeface requirement of FED. R. APP. P. 32(a)(5) and the type-style requirements of FED. R. APP. P. 32(a)(6) because:

   this brief has been prepared in a proportionally spaced typeface in Microsoft Word version 2506 using 14-point Times New Roman font in the text and 12-point Times New Roman font in the footnotes.

Executed on October 22, 2025.

*/s/D. Sterling Kidd*
D. Sterling Kidd

23